J-S42016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1215 MDA 2024 |

Appeal from the Decree Entered July 23, 2024
In the Court of Common Pleas of Mifflin County Orphans' Court at No(s):
2024-00028

| | | |
|---|---|---|
| IN THE INTEREST OF: K.B.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1216 MDA 2024 |

Appeal from the Decree Entered July 23, 2024
In the Court of Common Pleas of Mifflin County Orphans' Court at No(s):
2024-00029

| | | |
|---|---|---|
| IN THE INTEREST OF: B.A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1217 MDA 2024 |

Appeal from the Decree Entered July 24, 2024
In the Court of Common Pleas of Mifflin County Orphans' Court at No(s):
2024-00030

| | | |
|---|---|---|
| IN THE INTEREST OF: K.E.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S42016-24

APPEAL OF: T.W., MOTHER

:
:
:
:
:
:
:
:
:
:     No. 1218 MDA 2024

Appeal from the Decree Entered July 24, 2024
In the Court of Common Pleas of Mifflin County Orphans' Court at No(s):
2024-00031

IN THE INTEREST OF: S.R.W., A
MINOR


APPEAL OF: T.W., MOTHER

:     IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
:
:
:
:
:
:
:
:
:
:     No. 1219 MDA 2024

Appeal from the Decree Entered July 24, 2024
In the Court of Common Pleas of Mifflin County Orphans' Court at No(s):
2024-00032


BEFORE:  LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                    **FILED DECEMBER 17, 2024**

T.W. ("Mother") appeals from the decrees entered by the Mifflin County
Court of Common Pleas Orphans' Court ("orphans' court") terminating her
parental rights to five of her children, K.B.W. (born June 2010), Br.A.W. (born
April 2013), Be.A.W (born June 2014), K.E.W. (born February 2017), and
S.R.W. (born January 2023) (collectively, "the Children"), pursuant to 23

- 2 -

Pa.C.S. § 2511(a)(2), (8), and (b).[1,2] Because we conclude that the orphans' court did not abuse its discretion in terminating Mother's parental rights to the Children, we affirm.

We glean the following from the certified record. The Children have been in the physical custody of the Mifflin County Children and Youth Services (the "Agency") since February 9, 2023, pursuant to emergency protective custody orders. They initially came into the care of the Agency after S.R.W. tested positive for drugs at birth, which led the hospital to make a referral to the Agency. The juvenile court adjudicated the Children dependent on February 22, 2023. The Children have remained in the same preadoptive kinship homes since that time.[3]

The Agency developed child permanency plans for the Children and established parental objectives for Mother based on her history of illegal drug use, inappropriate home conditions, domestic violence, lack of financial stability, as well as her failure to act in a parental role. Mother's objectives

---

[1] This Court consolidated the appeals sua sponte on October 15, 2023.

[2] The Children's father, E.W. ("Father"), voluntarily relinquished his parental rights. The orphans' court entered orders on July 19, 2024, terminating Father's parental rights to the Children.

[3] The Children were initially placed with their paternal grandmother, but when the grandmother tested positive for drugs, the Agency obtained emergency orders of protective custody for the Children. N.T., 7/15/2024, at 6-7. Thereafter, K.B.W. and Br.A.W. were placed in the home of K.B.W.'s friend. *Id.* at 7. Be.A.W., K.E.W., and S.R.W. were placed in the home of an aunt and uncle. *Id.*

included: live a lifestyle free of drug use and criminal activity; obtain and maintain safe and stable housing and income; ensure the physical, educational, and emotional needs of the Children are met; work to improve overall parenting skills to work towards reunification; ensure Mother's mental health needs are met; and cooperate with the Agency and other service providers.

The juvenile court held permanency review hearings on July 24, 2023, and February 1, 2024, wherein the Agency noted that Mother was not compliant with the permanency plan and no progress towards alleviating the circumstances which necessitated the Children's original placement. The juvenile court never found Mother more than minimally compliant with her objectives. Mother was incarcerated—based on her probation violations and failure to report—for most of the time the Children were in the Agency's custody.[4]

Mother reported that she went to a rehabilitation center in March 2023, but refused to sign a release for the Agency to confirm her presence. On April 21, 2023, Mother reported to a treatment center but left against medical advice two days later. Mother reported to a different treatment center on April

_____

[4] During this time, Mother was incarcerated for about 280 days: April 10 to 12, 2023; April 14 to 21, 2023; and May 12, 2023, to February 4, 2024. Further, in July 2023, Mother pled guilty to two separate charges of driving with a suspended/revoked license and was sentenced to pay fines and costs. In September 2023, Mother pled guilty to possession of a controlled substance and was sentenced to one year of probation.

25, 2023, but again left against medical advice on May 12, 2023. In January 2024, the Tri-County Drug and Alcohol Abuse Commission tried to meet with Mother while she was incarcerated, but she refused.

Upon Mother's release from incarceration in February 2024, she went to live with Father, despite their history of domestic violence. In March 2024, police responded to Father's home for a report of domestic violence; subsequently, Mother informed the Agency that she moved in with her grandmother because of Father's daily methamphetamine use.

Throughout the proceedings, Mother was not employed, did not have stable income, did not attend any medical appointments for the Children, did not ask for updates regarding the Children's wellbeing, did not attend a mental health intake, and did not work toward improving her parenting skills.

A service provider, JusticeWorks, observed visits between Mother and the Children between February 2023 and February 2024. JusticeWorks offered eighteen visits to Mother, of which she participated in fourteen.[5]

Upon her release from incarceration in February 2024, Family Interventional and Crisis Services ("FICS") offered Mother services related to visitation, parent education, counseling, transportation, lifestyle checks, and drug and alcohol screening. Mother participated in four visits offered by FICS

---

[5] Prior to her incarceration, Mother participated in only one of the three visits. She attended most of her visits while incarcerated.

with the Children.[6]  During the visits, Mother did not demonstrate a parental role, intervene when the Children displayed inappropriate behaviors (such as throwing cups, hitting each other with pillows, and telling each other to shut up), check backpacks, or change diapers without prompting by FICS.  Instead, Mother talked about adult topics, such as money and her involvement with Father.  Because Mother did not attend the Children's therapy sessions to learn their exercises, she was unable to participate in therapeutic work with the Children.  Mother occasionally failed to show up to the visits, did not contact FICS ahead of time, and did not try to reschedule.  She did not attend any of the parent education and counseling sessions offered by FICS.  FICS unsuccessfully attempted two lifestyle checks and of the ten drug and alcohol screens attempted, Mother complied with four, two of which were positive.

On April 17, 2024, the Agency filed petitions to involuntarily terminate Mother's parental rights to the Children.  The orphans' court held a hearing on the petitions on July 15, 2024.  Mother failed to appear but was represented by counsel.  The Children's best and legal interests were represented separately by a Guardian Ad Litem ("GAL") and legal counsel.  The Agency confirmed the foregoing facts by presenting documentary evidence and the testimony of Agency caseworker Nicole Patkalitsky ("Patkalitsky") and FICS employee Mindi Crownover ("Crownover").

---

[6] The visits occurred at FICS because of safety concerns and space limitations of Mother's living arrangements.

Patkalitsky, who has worked at the Agency for eighteen years, testified that the Children go to the kinship foster parents as if they were their parents. N.T., 7/15/2024, at 11. The Children's needs are all being met by the kinship providers, including their special needs. *Id.* at 10-11. She described the Children as doing "fantastic" in the kinship foster homes, confirmed the foster families are willing to adopt them, and "absolutely" agreed that termination of Mother's parental rights best served the Children's needs and welfare and was in their best interests. *Id.* at 11.

Crownover, who has worked at FICS for twenty-five years, testified that Mother served in a friend, not parental, role to the Children during visits. *Id.* at 14. Mother arrived unprepared and ignored the Children during visits, failing to intervene or provide them with any guidance. *Id.* According to Crownover, "several" of the Children did not want to visit with Mother. *Id.* at 16. K.B.W. attended the first visit at FICS but talked to Mother about not wanting to continue. *Id.* After that, when FICS arrived to pick K.B.W. up from school for visits, she would not come out of the school and missed the visits. *Id.* Although Br.A.W. also expressed that she did not want to go to visits with Mother, she nonetheless attended. *Id.* When asked about the Children's bonds with Mother, Crownover did not testify that any bonds existed. *See id.* at 17. Rather, she characterized the Children's relationship with Mother as that of a friend, and that the Children are concerned about

Mother's safety and whereabouts. *Id.* Further, Crownover testified that the two oldest children, K.B.W. and Br.A.W., are parentified. *Id.*

Additionally, Crownover observed the Children in their kinship foster homes. In the home with the two oldest children, she saw K.B.W. and Br.A.W. smiling, enjoying being there, excited to talk about their school days, involved in extracurricular activities like soccer, and aware of their routines and what is expected of them. *Id.* at 18. For the three younger children, Crownover observed that K.E.W., Be.A.W., and S.R.W. knew what is expected of them; they go to the foster father for laughter, giggles, and jokes and she observed the foster mother to be warm, affectionate, and able to attend to their needs very well. *Id.* at 18-19. S.R.W. had been behind in several milestones but was "developing and progressing tremendously" in the foster home and the foster parents ensure she participates in all her therapy sessions. *Id.* K.E.W. is growing and developing, looks forward to extracurricular activities like baseball, and plays with the other children in the home. *Id.* at 19-20. Crownover likewise agreed that termination of Mother's parental rights best serves the Children's needs and welfare. *Id.* at 20.

The orphans' court entered decrees involuntarily terminating Mother's parental rights to the Children pursuant to 23 Pa.C.S. § 2511(a)(2), (8), and (b). These appeals followed.[7]

Mother presents one issue for our review: "Did the [orphans'] court abuse its discretion, or otherwise commit an error of law in failing to consider the interest of the Children, and properly evaluate any bond, by terminating the parental rights of [] Mother?" Mother's Brief at 8 (unnecessary capitalization omitted).

_____

[7] We note that the orphans' court filed the decrees terminating Mother's parental rights to two of the Children (Br.A.W and K.B.W.) on July 23, 2024, and to three of the Children (Be.A.W., K.E.W., and S.R.W.) on July 24, 2024. Mother filed her notices of appeal on August 23, 2024.

A notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). "The date of entry of an order in a matter subject to the Pennsylvania Rules of Orphans' Court Procedure shall be the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by Pa.R.O.C.P. 4.6." Pa.R.A.P. 108(c); *see also* Pa.R.A.P. 108(b). Rule 4.6 of the Pennsylvania Rules of Orphans' Court Procedure provides that "the clerk shall note in the docket the date when notice was given to the interested party or to his or her counsel" of the entry of a court order. Pa.R.O.C.P. 4.6(b); *see also* Pa.R.Civ.P. 236(b).

Instantly, there is no indication in the certified record that the orphans' court made the requisite notation in any of the five dockets that written notice of entry of the decrees was given to Mother or her counsel. Because the dockets do not establish when, if at all, notice was given. we find Mother's appeals were timely filed. *See* Pa.R.A.P. 108(c), 903(a); Pa.R.O.C.P. 4.6(b); *see also In re L.M.*, 923 A.2d 505, 509 (Pa. Super. 2007) (declining to find an appeal untimely where there was no indication on the docket of the required notation of notice because "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given") (citation and emphasis omitted).

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the [orphans'] court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [orphans'] court's decision, the decree must stand. We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the [orphans'] court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which requires a bifurcated analysis. *See id.* at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019). If the orphans' court determines the petitioner

established grounds for termination under section 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (en banc) (quotation marks and citations omitted).

Mother does not contest the orphans' court's termination of her rights to the Children pursuant to subsections (2) and (8) of section 2511(a).[8] We

---

[8] Section 2511(a) provides, in relevant part, as follows:

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and

*(Footnote Continued Next Page)*

therefore consider whether the record supports the orphans' court's conclusion that termination of Mother's parental rights best serves the developmental, physical, and emotional needs and welfare of the Children pursuant to section 2511(b).

Mother argues that the orphans' court erred in this regard because its bond analysis improperly focused on Mother's conduct instead of the effect on the Children of severing the parental relationship. Mother's Brief at 8, 15-19. She asserts that the Agency presented insufficient evidence of a bond assessment, the effect of severing it, and the reason why the Children did not want to attend visits with Mother. *Id.* at 17-19.

Section 2511(b) provides:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

Our analysis focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *T.S.M.*, 71 A.3d at 267. "[T]he determination of the child's needs

---

> termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a).

and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *Id.* (quotation marks omitted).

Additionally, our Supreme Court has explained that "the parental bond is but one part of the overall subsection (b) analysis[.]" *Interest of K.T.*, 296 A.3d 1085, 1113 (Pa. 2023). The needs and welfare analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *Id.* (citations omitted). "These factors and others properly guide the court's analysis of the child[ren]'s welfare and all [their] developmental, physical, and emotional needs." *Id.* Importantly, "[orphans'] courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." *Id.*

Instantly, the record supports the orphans' court's determination that the Children's needs and welfare are best served by the termination of Mother's parental rights. The Children are progressing well in their foster homes. Patkalitsky testified that the Children are doing "fantastic" in preadoptive homes with foster parents who are "definitely" meeting all their

developmental, physical, and emotional needs. *See* N.T., 7/15/2024, at 7, 10-11. The Children all have special needs that are being met by the foster parents, requiring particularized care and participation by the foster parents both in and out of the home with medical specialists, individualized education plans at school, and speech, physical, and occupational therapies. *See id.* at 10-11, 19. In the kinship foster homes, Crownover observed that the Children enjoy being there, smile, talk excitedly about their school days, "happily" help themselves to snacks, are "very active" and involved in sports and extracurricular activities, play with other children in their foster homes, and have their physical, mental, emotional, and educational needs met by their foster parents. *See id.* at 18-20.

Additionally, our review of the record confirms the orphans' court's finding that there was no evidence of a bond between Mother and the Children. *See* Orphans' Court Opinion, 7/19/2024, at 7. The record does not reflect a history of Mother in a caregiving role or meeting the Children's developmental needs such that they developed an attachment to her. *See In re P.Z.*, 113 A.3d 840, 852 (Pa. 2015) (finding termination of parental rights supported under 2511(a)(8) and (b) where child was familiar with parent, but no attachment existed and parent did not have a history of engaging in a caregiving relationship with child or taking responsibility for child over an extended period). Without record evidence of a bond between Mother and the

Children, we infer that no bond exists. **Matter of M.P.**, 204 A.3d 976, 984 (Pa. Super. 2019) (citation omitted).

Moreover, Patkalitsky and Crownover testified that the Children do not see Mother in a parental role and instead go to their foster parents as if they were their natural parents. **See** N.T., 7/15/2024, at 11, 14, 17. The Children view Mother in a friend role where they like to know she is safe, and Crownover testified that "several" of the Children do not want to see her. **See id.** at 16-17.

Our review of the record supports the orphans' court's conclusion that terminating Mother's parental rights best serves the Children's needs and welfare. Therefore, we discern no abuse of discretion or error of law in its conclusion that the Children's developmental, physical, and emotional needs and welfare are best met by terminating Mother's parental rights, freeing them for adoption by families that are able to fully attend to their needs and provide them with safety and stability. **See** 23 Pa.C.S. § 2511(b); **T.S.M.**, 71 A.3d at 267; **K.T.**, 296 A.3d at 1113. As the orphans' court's determination pursuant to section 2511(b) is supported by the record, we affirm the decrees terminating Mother's parental rights to the Children. **See C.M.**, 255 A.3d at 358-59.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/17/2024